No. 3-09-0101

_____

Filed October 15, 2009

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | | |
|---|---|---|
| ELTON MONSON, Superintendent of the Veterans Assistance Commission of Grundy County, Illinois, | ) ) ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit Grundy County, Illinois |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 07-MR-16 |
| THE COUNTY OF GRUNDY, ILLINOIS, a Local Government Body, | ) ) ) ) ) | Honorable Robert C. Marsaglia, |
| Defendant-Appellee. | ) | Judge, Presiding, |

_____

JUSTICE LYTTON delivered the opinion of the court:

_____

Plaintiff, Elton Monson, Superintendent of the Veterans Assistance Commission of Grundy County, Illinois (VACGC), filed a mandamus action against defendant, County of Grundy, to require defendant to pay vouchers he submitted on behalf of VACGC. Defendant filed a motion to dismiss, which the trial court granted. We affirm.

VACGC was formed in 1999 and became recognized by defendant as a local governmental unit in 2002. Plaintiff, Elton Monson, is the superintendent of VACGC. In early 2005, defendant requested a proposed budget from VACGC for fiscal year 2006, which runs from December 1, 2005, to November 30, 2006. Plaintiff submitted a

proposed budget of $208,750, which was a 20% increase from the prior fiscal year. When defendant requested that VACGC decrease its proposed budget, VACGC's chairman, James Sterba, responded that its submitted budget "stands as is."

On November 8, 2005, defendant approved the county's fiscal year 2006 budget, which included a budget of $119,999 for VACGC. VACGC depleted its approved budget in October 2006. On November 28, 2006, VACGC submitted bills and claims to defendant for repayment. In a letter dated December 11, 2006, the county administrator, Alfred Bourdelais, explained that claims submitted by VACGC on November 28, 2006, were denied, in part, because "no funds are available."

On April 11, 2007, plaintiff filed a petition for order of mandamus against defendant seeking to require defendant, pursuant to section 2 of the Military Veterans Assistance Act (Act) (330 ILCS 45/2 (West 2006)), to pay bills, claims and vouchers submitted by VACGC to defendant during fiscal year 2006. The unpaid bills, claims and vouchers submitted by VACGC totaled $23,302.70 and consisted of attorney fees, vehicle insurance, mileage, drivers' wages, phone cards, office supplies, advertising, court filing fees, and clerk wages.

Defendant filed a motion to dismiss, arguing, in part, that plaintiff's mandamus action was barred by laches. Attached to the motion to dismiss was an affidavit from Bourdelais, which stated in part:

"4. Following approval of the FY 06 budget including

2

the revised Veterans Assistance Commission budget, the Veterans Assistance Commission of Grundy County never objected in writing to the County of Grundy regarding the approved budget.

5. After December 1, 2005, the Veterans Assistance Commission of Grundy County never asked the county of Grundy to increase its FY 06 budget or any individual line item thereof, even though they were informed that a written request would be needed to increase the budget."

The trial court granted defendant's motion to dismiss, finding that "there are no disputed facts" and that <u>laches</u> applies.

Thereafter, plaintiff filed a motion to vacate judgment and/or order a rehearing because his attorney failed to provide certain affidavits to the court. Attached to the motion were affidavits from plaintiff, as well as the chairman and vice-chairman of VACGC, asserting that they (1) "never received any VACGC FY2006 Budget modification proposal from anyone from the Grundy County Board or County Administrator, Alfred Bourdelais"; (2) "did not know that the VACGC FY2006 Budget figures submitted would be changed by the Grundy County Board or by the County Administrator, Alfred Bourdelais"; (3) "never knew that any of the VACGC FY2006 Budget figures were changed by the Grundy County Board or by the County Administrator, Alfred Bourdelais"; and (4) "never received any notification from the Grundy County Board or County Administrator, Alfred Bourdelais, that a written request would be needed to increase the budget."

3

The trial court granted plaintiff's motion and allowed a rehearing. Following the rehearing, the trial court found that a "factual dispute does exist" over when plaintiff became aware that an amount less than VACGC's proposed budget was approved by defendant for fiscal year 2006. Nevertheless, the court dismissed plaintiff's complaint, concluding that it was "brought too late."

ANALYSIS

Plaintiff argues that the trial court erred in applying the doctrine of laches to defeat his mandamus action brought under the Act because he filed the action only four months after defendant notified him that VACGC's budget was depleted. Defendant responds that laches applies because plaintiff did not file his action until after fiscal year 2006 was over.

The Act was created to provide needed assistance to honorably discharged veterans, their families, and the families of deceased veterans. 330 ILCS 45/2 (West 2006). The Act authorizes the organization of veterans assistance commissions (VACs), consisting of one delegate and one alternate from each post, camp, unit, chapter and ship of each legally recognized military veterans organization within the county. 330 ILCS 45/9 (West 2006). The executive powers of each VAC are vested in an elected superintendent. 330 ILCS 45/10 (West 2006).

Section 2 of the Act mandates that upon the recommendation of the VAC, "the county board shall provide such sums of money as may be just and necessary" to assist veterans and their families. 330 ILCS 45/2 (West 2006). A VAC superintendent may seek a writ of

4

mandamus when the county board fails to appropriate just and necessary amounts for veterans' benefits. 330 ILCS 45/2 (West 2006). The procedure for requesting and receiving veterans' benefits is as follows:

"Initially the VAC initially makes a recommendation of an amount that it believes to be appropriate under the law. The county board then acts upon that recommendation, either to approve or disapprove the recommendation. [Citation.] If the board approves the VAC's recommendation, the matter is resolved. If the board disapproves the recommendation, the VAC then has two options: it may submit a new recommendation for a different amount or the superintendent may seek judicial relief for mandamus. After listening to the views of the parties, the circuit court may issue a writ of mandamus for either the amount sought by the VAC or a different amount." Veterans Assistance Comm'n v. County Board, 274 Ill. App. 3d 32, 37, 654 N.E.2d 219, 223 (1995).

The doctrine of laches is grounded on the principle that courts are reluctant to come to the aid of a party who knowingly slept on rights to the detriment of the other party. In re Estate of Beckhart, 371 Ill. App. 3d 1165, 1170, 864 N.E.2d 1002, 1007 (2007). In order to apply, the defense of laches requires a showing that (1) a party has exhibited an unreasonable delay in asserting a claim; and (2) the opposing party has suffered prejudice as a result of the delay. Beckhart, 371 Ill. App. 3d at

5

1170, 864 N.E.2d at 1007. The general rule is that a delay of six months or longer is per se unreasonable. See Bill v. Board of Education of Cicero School District 99, 351 Ill. App. 3d 47, 55, 812 N.E.2d 604, 611 (2004). The laches doctrine applies to actions at law, including petitions for mandamus. Washington v. Walker, 391 Ill. App. 3d 459, 463, 908 N.E.2d 1066, 1070 (2009); Bill, 351 Ill. App. at 57-58, 812 N.E.2d at 612-13.

When a plaintiff files a complaint challenging budget decisions for a fiscal year that has ended, laches applies because the plaintiff's unreasonable delay prejudices the budgeting authority. See Pace v. Regional Transportation Authority, 346 Ill. App. 3d 125, 144, 803 N.E.2d 13, 29 (2003). In Pace, the plaintiff filed a complaint on January 11, 2002, challenging budget decisions that the Regional Transportation Authority (RTA) made from 1996 to 2002. The 2002 fiscal year began on January 1, 2002, and RTA rejected Pace's proposed 2002 budget on December 28, 2001. The court concluded:

"Pace filed its complaint *** shortly after the 2002 fiscal year started and shortly after the RTA made the challenged budget decisions. Because Pace sued promptly, laches does not apply to the 2002 budget decisions.

Laches does apply, however, to Pace's request for a monetary award representing subsidies that Pace alleges it should have received in the years 1996 through 2001. When Pace filed its complaint, these budget years had concluded, and, presumably, the funds at issue were no

6

longer available. It would be highly prejudicial to require RTA to pay these 'back subsidies' long after these funds have become a part of the RTA's budget history. Therefore, we conclude that Pace may not recover 'back subsidies' for the years 1996 through 2001." Pace, 346 Ill. App. 3d at 144, 803 N.E.2d at 29-30.

Even though Pace filed its complaint just 11 days after Fiscal Year 2001 ended, the court found that laches prohibited Pace from challenging RCA's 2001 budget decisions.

Here, we find that plaintiff's unjustified delay in bringing the action prejudiced defendant. Defendant made its final fiscal year 2006 budget decisions on November 8, 2005. Plaintiff filed his mandamus action on April 11, 2007, more than 17 months after defendant approved the fiscal year 2006 budget and over 4 months after fiscal year 2006 ended. In his mandamus action, plaintiff sought to require defendant to provide additional funds to VACGC after VACGC had expended its entire fiscal year 2006 budget. However, the funds plaintiff was requesting were no longer available. To require defendant to pay VACGC's claims after its budget was exhausted and after fiscal year 2006 came to a close would be "highly prejudicial." See Pace, 346 Ill. App. 3d at 144, 803 N.E.2d at 29-30.

Plaintiff argues that laches should not apply because he alleges that he did not know that defendant reduced VACGC's proposed budget for fiscal year 2006 until after the fiscal year

7

ended.  We reject this contention.  A VAC seeking appropriations under section 2 of the Military Veterans Assistance Act must make itself aware of county board decisions and respond accordingly. See Veterans Assistance Comm'n, 274 Ill. App. 3d at 37, 654 N.E.2d at 223.  Here, VACGC made no effort to ascertain its own budget for fiscal year 2006 or its remaining balance at any time during the year even though that information was public and readily available. See 55 ILCS 5/6-1006 (West 2006) (county treasurer and county clerk required to keep accounting of each fund).  Instead, plaintiff sat idly by and submitted claims until he was notified that he had exceeded VACGC's budget.  We will not reward plaintiff for his own nonfeasance.  See Demos v. Ferris-Shell Oil Co., 317 Ill. App. 3d 41, 51, 740 N.E.2d 9, 17 (2000) ("'nonfeasance' is the omission of an act which a person ought to do"), citing Black's Law Dictionary 1054 (6th ed. 1990).  We affirm the trial court's dismissal of plaintiff's complaint.

CONCLUSION

The judgment of the circuit court of Grundy County is affirmed.

Affirmed.

SCHMIDT and WRIGHT, JJ., concur.