2020 IL App (1st) 191133

Fourth Division
August 13, 2020

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| JAMES JORGENSEN and JEAN JORGENSEN, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| | ) | No. 18 CH 2881 |
| v. | ) ) | |
| | ) | The Honorable |
| JOSEPH BERRIOS, in His Official Capacity as | ) | David B. Atkins, |
| Assessor of Cook County; MARIA PAPPAS, in Her | ) | Judge Presiding. |
| Official Capacity as Cook County Treasurer and | ) | |
| *ex officio* County Collector; and THE COUNTY OF | ) | |
| COOK, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     The instant appeal arises from a lawsuit filed by plaintiffs James and Jean Jorgensen against Cook County and its assessor[1] and treasurer, in connection with the assessment of the value of a historic residence owned by plaintiffs. Plaintiffs allege that they are entitled to a tax freeze under the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2014)) that defendants failed to

_____

[1]The assessor at the time plaintiffs filed their complaint was Joseph Berrios, but the current assessor is Fritz Kaegi.

apply, and they filed a suit for declaratory judgment, *mandamus*, and for an injunction. Defendants filed a motion to dismiss, claiming that the trial court did not have jurisdiction to consider the matter and further claiming that plaintiffs' complaint failed to state a cause of action for any of their claims. The trial court found that it lacked jurisdiction to consider the matter for the taxpayers' failure to exhaust administrative remedies, and it granted defendants' section 2-619 motion to dismiss on that basis. 735 ILCS 5/2-619 (West 2018). Plaintiffs appeal and, for the reasons that follow, we affirm.

¶ 2                                     BACKGROUND

¶ 3                                I. Property Tax Code

¶ 4        As the instant appeal concerns a tax freeze under the Property Tax Code, it is helpful to first discuss the provisions of the statute concerning the claimed tax freeze found in a portion of the Property Tax Code known as the Historic Residence Assessment Freeze Law (Freeze Law). See 35 ILCS 200/10-40 to 10-85 (West 2014). In order to encourage the rehabilitation of historic residences, properties certified under the Freeze Law are eligible for an assessment freeze that eliminates from consideration the value added by any rehabilitation to the property and limits the total valuation to the "base year valuation" as defined by the Freeze Law. 35 ILCS 200/10-45 (West 2014).

¶ 5        A property owner seeking to take advantage of the Freeze Law must file an application for a certificate of rehabilitation with the Director of Historic Preservation (Director), who shall approve the application upon finding that certain criteria have been satisfied. 35 ILCS 200/10-55 (West 2014). As part of the certificate of rehabilitation, the Director identifies the rehabilitation period, which generally is not to exceed two years. 35 ILCS 200/10-55 (West

2014). The certificate of rehabilitation is then transmitted to the property owner and to the chief county assessment officer. 35 ILCS 200/10-55 (West 2014).

¶ 6    Upon receipt of the certificate of rehabilitation, the assessment officer shall determine the "base year valuation" of the property. 35 ILCS 200/10-70(a) (West 2014). Under the Freeze Law, the base year valuation "means the fair cash value of the historic building for the year in which the rehabilitation period begins but prior to the commencement of the rehabilitation and does not include any reduction in value during the rehabilitation work." 35 ILCS 200/10-40(i) (West 2014). For any property on which the Director has issued a certificate of rehabilitation, "the valuation for purposes of assessment shall not exceed the base year valuation for the entire 8-year valuation period" (35 ILCS 200/10-45 (West 2014)) commencing from the date of issuance of the certificate of rehabilitation (35 ILCS 200/10-40(k) (West 2014)).

¶ 7    After the expiration of the eight-year valuation period, the next four years are considered an "adjustment valuation period," in which the assessed valuation gradually increases until, in the fourth year, the assessed value is the current fair cash value of the property. 35 ILCS 200/10-40(*l*), 10-50 (West 2014). With respect to both the eight-year valuation period and the four-year adjustment valuation period, the assessment officer "shall make a notation on each statement of assessment during the 8-year valuation period and the adjustment valuation period that the valuation of the historic building shall be based upon the issuance of a certificate of rehabilitation." 35 ILCS 200/10-70(a) (West 2014).

¶ 8                                    II. Complaint

¶ 9    On March 2, 2018, plaintiffs filed a complaint against defendants for declaratory judgment, *mandamus*, and for an injunction. The complaint alleges that plaintiffs own a home in Glencoe, which was designated as a certified landmark by the Village of Glencoe on May 19, 2016. The

3

complaint further alleges that plaintiffs filed an application for a certificate of rehabilitation under the Freeze Law, which was approved on October 26, 2016; a copy of the certificate of rehabilitation was attached to the complaint. The certificate of rehabilitation identifies the rehabilitation period as January 2015 through August 2016.

¶ 10    The complaint alleges that the 2015 assessment on the property was $199,735, that the 2016 assessment on the property was $528,480, and that the 2017 assessment on the property was $462,420. Copies of the assessments for each year were attached to the complaint: (1) for 2015, the original assessed value of the property was $462,420, but plaintiffs appealed to the Board of Review, which reduced the assessed value to $199,735; (2) for 2016, the assessed value of the property was $528,480, which was not reduced by the Board of Review; and (3) for 2017, a "proposed" assessed value was $528,480, but after an assessment appeal, the assessed value was reduced to $462,420 by the assessor's office as "the result of a Property Tax Freeze Program for Historic Residences." The complaint alleges that plaintiffs paid the property taxes for 2016 and paid the first installment of the 2017 taxes; property taxes for the second installment for 2017 were not yet due and payable at the time of the filing of the complaint.

¶ 11    Count I of the complaint is for declaratory judgment and alleges that the 2016 and 2017 assessments should have been subject to a tax freeze based on the final assessment in place at the commencement of the rehabilitation period, which was $199,735. However, count I alleges that defendants "have refused to implement the freeze value" of $199,735, instead assessing the property at $528,480 for 2016 and $462,420 for 2017. Count I requests "that the Court declare [plaintiffs'] rights under the statute, finding that the final 2016 and 2017 assessment and taxes as determined by Defendants are erroneous, improper, illegal, and void, and that the correct assessment should be $199,735 under the statute." Count I further alleges that plaintiffs

have no adequate remedy at law and are "irreparably damaged in that taxes on the subject property as assessed by defendants for 2016 and 2017 are significantly higher than what they should have been had the freeze value been properly implemented in accordance with the statute."

¶ 12     Count II of the complaint is for a writ of *mandamus* and alleges that the Freeze Law required defendants to assess and tax plaintiffs' property at the value in place at the commencement of the rehabilitation period in 2015. Count II requests that, "[b]ecause Defendants, in their official capacity, have refused to act in a manner required of them by statute," the court should enter a writ of *mandamus* compelling them to do so. Count II alleges that plaintiffs have no adequate remedy at law and that it was the assessor's duty to permanently input the correct assessment under the Freeze Law and to designate the freeze in defendants' records for the entirety of the 12-year period covered by the statute.

¶ 13     Count III of the complaint is for an injunction and alleges that the right of plaintiffs to the benefits of the tax freeze throughout the 12-year period is a "clear and ascertainable right in need of protection." Count III alleges that, if defendants continued to refuse to implement the freeze, plaintiffs would suffer "repeated and irrevocable harm" in that they would either be forced to pay the increased taxes in full or would be required to expend resources unnecessarily appealing the assessment throughout the 12-year freeze period, which would "effectively negat[e] the benefits of the program." Count III alleges that plaintiffs have no adequate remedy at law, as "[n]o amount of monetary relief would make Plaintiff[s] whole or enable Plaintiff[s] to lawfully enjoy the intended benefits of the freeze without an injunction extended against the Defendants." Accordingly, count III requests an order enjoining defendants from assessing

5

plaintiffs' property at any value other than $199,735 for the eight-year valuation period and to properly assess the property for the four-year adjustment valuation period.

¶ 14                                                    III. Motion to Dismiss

¶ 15        On May 25, 2018, defendants filed a combined motion to dismiss the complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). Defendants claimed that, in essence, plaintiffs were challenging their tax assessment and were asserting that their property had been overassessed. Defendants thus claimed that the complaint should be dismissed under section 2-619(a)(1) of the Code (735 ILCS 5/2-619(a)(1) (West 2018)) because the trial court lacked subject-matter jurisdiction to decide a challenge to plaintiffs' property tax assessment. Defendants argued that plaintiffs' claim for equitable relief fails because plaintiffs failed to exhaust their administrative remedies under the Property Tax Code. Defendants noted that plaintiffs had, in fact, challenged their assessment for 2016 pursuant to those procedures but filed suit before the resolution of their appeal before the Property Tax Appeal Board. Defendants further argued that the allegations of plaintiffs' complaint fell "squarely within the realm of statutory remedies and outside the narrow allowance for equitable relief" because they were merely challenging the amount of their tax assessment.

¶ 16        Defendants also claimed that the complaint should be dismissed under section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)) because plaintiffs had failed to state a cause of action for any of their claims. Defendants further claimed that Cook County should be dismissed as a defendant under section 2-615 because plaintiffs had failed to allege any facts showing that the county was responsible for tax assessment and collection of taxes and the county could not, as a matter of law, be sued for conduct of its independent elected officials.

¶ 17　　　　In response, plaintiffs claimed that dismissal was improper because the issue was not merely one of an improper tax assessment, as defendants claimed. Instead, plaintiffs argued that their claims concerned a specific nondiscretionary directive imposed on the assessing official, who refused to act in accordance with the statute. Plaintiffs argued that the equitable relief they sought was the only way in which defendants could be ordered to comply with their statutory duties for the entirety of the 12-year period covered by the Freeze Law.

¶ 18　　　　On January 15, 2019, the trial court entered an order granting defendants' motion to dismiss with prejudice, finding that the court lacked jurisdiction to consider plaintiffs' claims for failure to exhaust administrative remedies. The court found unpersuasive plaintiffs' claims that their equitable claims were properly before the court, finding that plaintiffs did not argue that the property was exempt from taxation or that defendants had failed to implement the relevant statutory tax freeze. Instead, the court found that plaintiffs alleged that defendants incorrectly implemented the tax freeze by applying the wrong yearly assessment in contravention of the statute, a claim which "remain[ed] squarely within the comprehensive system of the Property Tax Code."

¶ 19　　　　On February 14, 2019, plaintiffs filed a motion for reconsideration, which the trial court denied on April 29, 2019. This timely appeal follows.

¶ 20　　　　　　　　　　　　　　　　ANALYSIS

¶ 21　　　　On appeal, plaintiffs contend that the trial court erred in granting defendants' motion to dismiss, claiming that the court had jurisdiction to consider their claims and that they stated a cause of action for each claim. In the case at bar, defendant filed a combined motion to dismiss pursuant to section 2-619.1 of the Code, which permits a party to file a motion to dismiss based on both section 2-615 and section 2-619 of the Code. 735 ILCS 5/2-619.1 (West 2018).

However, the trial court's dismissal was based only on section 2-619 of the Code. A motion to dismiss under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). When reviewing a motion to dismiss under section 2-619, "a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). Additionally, a cause of action should not be dismissed under section 2-619 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). For a section 2-619 dismissal, our standard of review is *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc.*, 231 Ill. 2d at 488. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). Additionally, even if the trial court dismissed on an improper ground, a reviewing court may affirm the dismissal if the record supports a proper ground for dismissal. See *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004) (when reviewing a section 2-619 dismissal, we can affirm "on any basis present in the record"); *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008) ("we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground").

¶ 22        Defendants' motion in the instant case was based on section 2-619(a)(1), which seeks dismissal on the grounds "[t]hat the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court having

jurisdiction." 735 ILCS 5/2-619(a)(1) (West 2018). Subject-matter jurisdiction refers to a court's power to hear and decide cases of a general class. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2015 IL 117443, ¶ 15. With the exception of administrative review actions and certain cases for which the supreme court has exclusive jurisdiction, circuit courts have original jurisdiction of all justiciable matters pursuant to the Illinois Constitution. *Ferris, Thompson & Zweig*, 2015 IL 117443, ¶ 15. Here, defendants claim that the trial court lacked subject-matter jurisdiction over plaintiffs' claims because the Property Tax Code provides plaintiffs with a complete and adequate remedy at law through the exhaustion of administrative remedies.

¶ 23        "In the field of taxation the general rule applies that equity will not assume jurisdiction to grant relief where an adequate remedy at law exists." *Clarendon Associates v. Korzen*, 56 Ill. 2d 101, 105 (1973); see also *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 295 (2010). "[T]he Property Tax Code is a comprehensive statute regulating the assessment and collection of taxes." *Millennium Park*, 241 Ill. 2d at 295. Thus, a taxpayer is generally limited to first exhausting administrative remedies provided by the statute before seeking relief in the circuit court, beginning with the Board of Review. *Millennium Park*, 241 Ill. 2d at 295. The taxpayer then has the option of either appealing to the Property Tax Appeal Board or filing a tax objection complaint in the circuit court. *Millennium Park*, 241 Ill. 2d at 296. "Thus, the adequate remedy at law is to pay the taxes under protest and file a statutory objection." *Millennium Park*, 241 Ill. 2d at 296.

¶ 24        This general rule is subject to two exceptions: "A taxpayer need not look to the remedy at law but may seek relief by way of injunction where the tax is unauthorized by law or where it is levied upon property exempt from taxation." *Clarendon Associates*, 56 Ill. 2d at 105. Such cases constitute independent grounds for equitable relief and do not require that the remedy at

law be inadequate. *Clarendon Associates*, 56 Ill. 2d at 105. In the case at bar, plaintiffs do not contend in their briefs that either of these exceptions applies, but they raised their applicability for the first time during oral argument on this matter. It is well settled that "[p]oints not argued [in the appellant's brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Thus, plaintiff's arguments concerning the applicability of these two exceptions are not properly before us.

¶ 25    Furthermore, even if properly raised, we would not find these exceptions applicable. "[A] true 'unauthorized by law' challenge arises where the taxing body has no statutory power to tax in a certain area or has been given no jurisdiction to tax a certain subject, as opposed to a complaint that merely alleges procedural errors or irregularities in the taxing process, in which case equity relief would not be available." *Millennium Park*, 241 Ill. 2d at 307. Here, there can be no doubt that defendants had the authority to tax plaintiffs' property—the only issue is the amount of the tax imposed. With respect to the second exception, plaintiffs claimed at oral argument that, because the assessed value under the Freeze Law was lower than the fair value of the property, any excess in value was "property exempt from taxation" which would support an equitable remedy. Plaintiffs cite no applicable authority for this novel reading of the law, and we do not find it persuasive. Thus, even if properly raised before us, we would not find either of these exceptions applicable.

¶ 26    However, plaintiffs' main focus in their briefs concerns what they call a third exception. In *Clarendon Associates*, our supreme court held that "[t]here will be cases of fraudulently excessive assessments where the remedy at law will not be adequate and injunctive relief should then be available." *Clarendon Associates*, 56 Ill. 2d at 108. An example of the type of case falling within this exception can be found in our supreme court's decision in *Hoyne*

*Savings & Loan Ass'n v. Hare*, 60 Ill. 2d 84 (1974), decided the year after *Clarendon Associates*. In that case, the assessed valuation of the plaintiff's property increased from $9510 in 1970 to $246,810 in 1971. *Hoyne*, 60 Ill. 2d at 86. The plaintiff first learned of the increased assessment upon receiving a tax bill on November 5, 1972, shortly before taxes were due on November 24, 1972, and after the Board of Review had already completed its hearings on the objections to the assessments on which the 1971 taxes were based. *Hoyne*, 60 Ill. 2d at 87. The plaintiff thus did not seek relief from the Board of Review or pay the taxes under protest but instead filed suit for equitable relief in the circuit court. *Hoyne*, 60 Ill. 2d at 87. The plaintiff also chose to file suit instead of pursuing administrative remedies with respect to the 1972 taxes, which were based on the same assessment. *Hoyne*, 60 Ill. 2d at 87. However, the Board of Review subsequently reviewed the assessment for 1973 and reduced the assessed valuation to $55,000. *Hoyne*, 60 Ill. 2d at 88.

¶ 27    With respect to the 1971 taxes, the supreme court found that "[t]he unusual circumstances present in this case, coupled with the now admitted fact that the assessment for 1971 was grossly excessive, require that equity retain jurisdiction of this case to grant relief to the plaintiff." *Hoyne*, 60 Ill. 2d at 89. The court pointed to a number of factors supporting this conclusion, including (1) the dramatic increase in the assessed valuation of the same property with the same improvements; (2) the fact that the assessment was based on uses not permitted by the existing zoning of the property and on inaccurate assumptions as to improvements on the property; (3) the late issuance of the tax bills and the fact that the plaintiff first received actual notice of the increased assessment after the Board of Review had "closed its books" for the 1971 taxes; and (4) the substantially reduced assessment in 1973, which showed that the 1971 assessment was "grossly excessive." *Hoyne*, 60 Ill. 2d at 89-90. The court found that

"[u]nder these circumstances it would be extremely unfair and unjust for this court to adhere to a rigid formula which would require that all relief from fraudulently excessive assessments be sought through the legal remedy provided by statute." *Hoyne*, 60 Ill. 2d at 90. However, the court found "[t]he same facts requiring equitable consideration do not exist" regarding the 1972 tax bill, which the plaintiff had ample opportunity to challenge using the remedies provided by statute. *Hoyne*, 60 Ill. 2d at 91.

¶ 28     In the case at bar, there is nothing in plaintiffs' complaint that would suggest that they were subject to "fraudulently excessive assessments" as contemplated in *Clarendon Associates*. Their claims are based on the argument that the assessor's office failed to properly apply the tax freeze under the Freeze Law, resulting in a higher assessment. Plaintiffs attempt to style their claim as one in which the assessor is failing to perform a nondiscretionary duty under the Freeze Law, suggesting that this would be sufficient to constitute a "fraudulently excessive assessment." We do not find this argument persuasive. We must first note that their claim is not as cut-and-dry as plaintiffs suggest. Looking at the exhibits to plaintiffs' complaint, the assessor originally assessed the value of the property in 2015 as $462,420, which would be considered the "base year valuation" required by the Freeze Law, but this value was reduced by the Board of Review. This original "base year valuation" is the same assessed value applied in 2017.[2] Thus, while the Freeze Law requires that "the valuation for purposes of assessment shall not exceed the base year valuation for the entire 8-year valuation period" (35 ILCS 200/10-45 (West 2014)), it remains a question as to whether the assessor was required to apply the reduced figure instead of the original "base year valuation," which is certainly not an automatic, straightforward decision, as plaintiffs imply. We make no comment as to the answer

---

[2]We note that the 2016 valuation was higher than the original "base year valuation."

to this question, as it is not before us on the instant appeal, but it demonstrates that the issues raised by plaintiffs are more than merely a failure to follow the nondiscretionary dictates of the Freeze Law. Additionally, plaintiffs' claims are ones that could easily be raised pursuant to the mechanisms set forth in the Property Tax Code, and plaintiffs set forth no substantive reasons why the statutory mechanisms would be unavailable to them or inadequate to address their concerns.

¶ 29    We also find unpersuasive plaintiffs' claim that requiring them to file objections for the 12-year period results in irreparable injury. It may be inconvenient for plaintiffs to challenge their assessments every year, but that does not equate to an irreparable injury. Their only support for this proposition is a citation of *Owens-Illinois Glass Co. v. McKibbin*, 385 Ill. 245 (1943). However, the supreme court in that case merely made a passing reference to a "multiplicity of suits" in discussing imprecise language used in an earlier case.[3] *Owens-Illinois Glass Co.*, 385 Ill. at 256. Nothing in that case suggests that plaintiffs may file a suit in chancery and bypass statutory remedies merely because they would be required to challenge several years' worth of taxes. Indeed, in *Hoyne*, a case cited by plaintiffs in support of their claims, the supreme court found that the plaintiff could seek equitable relief for 1971 taxes but

---

[3]The supreme court found that, where there was a tax that was unauthorized by law or that was assessed on exempt property, it was not necessary to establish that there was no adequate remedy at law. *Owens-Illinois Glass Co.*, 385 Ill. at 256. The court then noted that there were some cases that appeared to be in conflict with this rule but that, in those cases, "for the most part the language relied upon as supporting a contrary rule was inadvertently used, or the cases were those involving irregularities rather than illegalities." *Owens-Illinois Glass Co.*, 385 Ill. at 256. As an example, the supreme court pointed to *County of Cook v. Chicago, Burlington & Quincy R.R. Co.*, 35 Ill. 460 (1864), and noted that, in that case,
> "the statement is made that a suit in equity will not lie to restrain the collection of a tax illegally assessed without setting forth special circumstances showing such collection would be likely to produce irreparable injury or cause a multiplicity of suits. The injunction granted in that case restraining the collection of an illegal tax was, however, sustained, so the expression used must be regarded as inadvertently employed." *Owens-Illinois Glass Co.*, 385 Ill. at 256-57.

This is the only reference to a "multiplicity of suits" contained in the opinion.

should have pursued statutory remedies with respect to the 1972 taxes, despite the fact that the 1972 taxes were based on the same assessment as the 1971 taxes. See *Hoyne*, 60 Ill. 2d at 87, 89. Consequently, we cannot find that the case at bar represents the type of "case[ ] of fraudulently excessive assessments where the remedy at law will not be adequate and injunctive relief should then be available." *Clarendon Associates*, 56 Ill. 2d at 108. Accordingly, we find that the trial court properly found that it lacked subject-matter jurisdiction over plaintiffs' claims. See *Dumas v. Pappas*, 2014 IL App (1st) 121966, ¶ 19 (affirming dismissal for lack of subject-matter jurisdiction where plaintiffs had not exhausted administrative remedies and did not contend that property was tax exempt or that the tax was unauthorized by law). Since we have determined that the trial court properly dismissed plaintiffs' complaint on the basis of section 2-619, we have no need to consider plaintiffs' arguments concerning section 2-615.

¶ 30                                                    CONCLUSION

¶ 31        The trial court properly dismissed plaintiffs' complaint based on lack of subject-matter jurisdiction. Plaintiffs do not contend that the tax was unauthorized by law or that their property was exempt from taxation. Additionally, plaintiffs cannot establish that defendants' assessment of their property represented a fraudulently excessive assessment such that the remedy at law would be inadequate. Accordingly, plaintiffs are required to exhaust the administrative procedures set forth in the Property Tax Code with respect to challenging their assessments and may not bring suit directly in the circuit court.

¶ 32        Affirmed.

---

**No. 1-19-1133**

---

| | |
|---|---|
| **Cite as:** | *Jorgensen v. Berrios*, 2020 IL App (1st) 191133 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-2881; the Hon. David B. Atkins, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Saul Ewing, Arnstein & Lehr LLP, of Chicago (Hal R. Morris, David Dunkin, Elizabeth A. Thompson, and Erik VanderWeyden, of counsel), for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein and Sarah Cunningham, Assistant State's Attorneys, of counsel), for appellees. |

---